192     DUVALL'S REPORTS.

Longest's adm'r vs. Tyler's ex'r.

CASE 19—PETITION EQUITY—SEPTEMBER 24.

## Longest's adm'r vs. Tyler's ex'r.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. An executor brought suit in equity to subject the land of a debtor of the testator to the payment of the debt. Pending that suit, the land was sold under a decree in favor of the debtor's vendor for a balance of the purchase money, and the executor bought it. He afterwards sold and conveyed the land to a stranger, for more than enough to reimburse what he had paid for it, and to satisfy the debt due his testator. *Held*—That he was bound so to apply the proceeds, but was not bound for the surplus.

2. The doctrine of constructive fraud operates to prevent infidelity or spoliation in a class of cases embracing executors and other trustees, in which there may be temptations and facilities to rapacity.

3. It is the duty of trustees to guard, in good faith, the interests of their beneficiaries, and never to speculate on them, or through means afforded by them.

SPEED & SMITH, for appellant, cited 1 *Lead. Cas. in Eq.*, 65, 71; 9 *Paige*, 237.

G. A. & J. CALDWELL, for appellee, cited *Story's Eq.*, secs. 534, 1268; 1 *Lead. Cas. in Eq.*, 94, 103; 2 *Marsh.*, 388; 1 *Met.*, 618; *Hard.*, 535; 5 *Litt.*, 201.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

Levi Tyler, who was executor of C. Longest, deceased, and testamentary guardian of his infant son and only devisee (R. C. Longest), obtained, as executor, two judgments against S. K. Page for an aggregate amount exceeding $2,000. Executions on those judgments having been returned no property found, he filed a bill in the Louisville chancery court for subjecting to the satisfaction of that entire debt, Page's undivided moiety of 1,200 acres of land, in Hopkins county, Kentucky, to which Page was entitled jointly with one Ayres. Ayres and Page had purchased the land from *Coleman*, whom Page still owed a balance of about $2,500 of the price. During the pendency of Tyler's bill a partition between the joint owners alloted to Page 613 acres, and Coleman obtained a decree for selling that allotment for satisfying his unpaid balance. Tyler attended the sale and bought 595 acres for

Coleman's debt, then amounting to $2,595 70; and afterwards, the chancellor having, on Tyler's said bill, ordered a sale of the residual, 18 acres, in part satisfaction of Page's debt to Longest, Tyler bought that portion also, at the price of $40—thus buying the whole 613 acres for the sum of $2,595 70, in 1847–8. In 1852 he resold part of the land for $5,577, and, in 1856, sold the residue for $1,625, making the entire proceeds of sale $7,202.

In 1858 R. C. Woolfolk, administrator of the said R. C. Longest, who, in the meantime, had attained majority and died intestate, brought this suit in the Louisville Chancery Court, asserting an equitable right to the profits made by Tyler by the purchases and sales aforesaid. Tyler, in his answer, resisted the claim, and asserted that he had, in good faith, bought the land for his own benefit, and therefore had appropriated no portion of the proceeds of said land to the use of R. C. Longest on account of the judgments against Page.

The Chancellor adjudged to R. C. Longest's administrator vs. Guthrie, as Tyler's administrator, the amount due on the judgments Tyler, as executor of C. Longest, had obtained against Page; the whole of which still remains unpaid, although Tyler said to two witnesses, in 1852, that he had then saved that debt.

From that judgment each party has appealed.

In revising the case, we shall consider only one question involving the nature and extent of the trust under which Tyler bought the land.

To prevent infidelity or spoliation in a certain class of cases embracing executors and other trustees, in which there may be peculiar temptations and facilities to rapacity, and peculiar difficulty in detecting the wrong, the law has prudently established a jealous and preventive doctrine of constructive fraud. This provident doctrine may be sufficiently illustrated for this case by the following examples:

1. If an executor or other trustee, at a sale of any of the trust property, buy it, the beneficiary shall have the election to hold him to the purchase, or to disregard it and claim restitution of the thing sold or payment of its full value.

2. All profit made by a trustee by the use of any trust property belongs to the beneficiary.

3. If an executor or other trustee pay debts with less than the nominal amount, he is entitled to reimbursement of what he paid only.

4. If a trustee buy an encumbrance on the beneficiary's property, although he shall have paid his own money, he holds it to the use of the beneficiary at what he gave for it.

5. It is the duty of trustees to guard in good faith the interests of their beneficiaries, and never to speculate on them or through any means afforded by them.

A proper application of the comprehensive and conservative principle thus partially illustrated, will decide this case.

The pendency of the suit *in rem* against Page's land, operated as lien thereon in favor of the complainant Tyler, as executor of C. Longest. As the land was unquestionably more than sufficient for paying Page's debt to Longest, Tyler, even had there been no prior encumbrance, could not have defeated full payment by buying the land for himself, at a price less than the amount secured by the executorial lien, but would have held the land, so bought, still subject to that lien, or in trust for the deficit. The intervention of Coleman's prior lien did not change the equitable character or effect of his purchase. His extinguishment of that lien inured to the advantage of his lien as executor, but did not discharge that lien, and he still held the land subject to it so far as the value of the land exceeded the amount paid for removing Coleman's encumbrance. To that extent his own personal interest and his fiducial duty and interest were conflicting; and, therefore, his purchase must, to the same extent, be deemed a trust. This has been adjudged in the analogous case of *Van Epps vs. Van Epps* (9 *Paige's New York Chy. Reps.*, 237). In that case a trustee, in a junior mortgage, purchased for his own benefit and with his own money, at a decretal sale for satisfying the prior mortgage, and the chancellor decided that he held the property in trust for his beneficiary's claim under the junior mortgage, subject to a lien for what he had paid to extinguish the elder mortgage.

According to the principle as thus recognized and illustrated, Tyler, having sold and conveyed the land to strangers, had a right to retain of the proceeds as much as he paid; and then, as he sold it for a sum which would satisfy both liens and leave a large surplus, it was his duty to pay, or account for as paid, his judgments against Page. And we can see no consistent reason why the implied trust should be extended any further, or why, consequently, he should be held liable to his beneficiary for a surplus profit made by his own skill and with his own capital, and whereby he secured the trust debt. This was the judgment of the chancellor. We concur in its justice; and, therefore, it is hereby affirmed and the cross-appeal dismissed.